UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ALLSTATE INSURANCE COMPANY,**

    **Plaintiff,**

**v.**                                            **CASE NO. 8:08-CV-2253-T-33EAJ**

**ROBERT M. LEVESQUE, et al.,**

    **Defendants.**
_____/

## ORDER

Before the court are Plaintiff's **Motion to Compel Deposition Testimony of Michael Andrews, II** (Dkt. 52)[1], Defendants' **Amended Motion to Compel Production of Documents** (Dkt. 54), Plaintiff's **Motion to Compel Non-Party Tidewell to Comply with Subpoenas** (Dkt. 55), Plaintiff's **Motion to Compel Non-Parties VA Hospital and Bay Pines Hospital to Produce Records** (Dkt. 56) and the opposition to these motions (Dkts. 61, 63, 69, 71, 72, 73).

I.     Background

This is an action for declaratory relief filed by Plaintiff Allstate Insurance Company ("Allstate") seeking an order that Allstate has no duty to indemnify Defendants with regard to a consent judgment entered against Defendants. The dispute arises out of a motorcycle-automobile accident in 2004 involving Richard Cecchini ("Cecchini") and Robert Levesque ("Levesque"). As a result of the accident, Levesque sustained a brain injury. Levesque and his wife filed a tort action against Defendant Andrew's Florist on 4th Street, Inc. ("Andrew's Florist"), Defendant Blanca Michaels and Defendant Andrew Michaels (the "Michaels"), and Cecchini.

---

[1] Allstate mistakenly refers to Defendant Andrew Michaels as Michael Andrews, II.

Andrew's Florist had a commercial liability policy with Safeco. Safeco hired the law firm of Smith Clark Delesie and Kadyk ("Smith Clark") to defend the suit filed by the Levesques. In addition, Andrew's Florist had a commercial automobile policy with Allstate. On August 31, 2005, although Allstate asserted a reservation of rights to deny coverage, Allstate hired the law firm of Fowler, White, Boggs, Banker, P.A. ("Fowler White") to defend Andrew's Florist and the Michaels.

In July 2008, Levesque was diagnosed with larynx cancer. On August 21, 2008, James Beach, Esq. ("Beach"), the personal attorney for Andrew's Florist and the Michaels, announced that Defendants were dissatisfied with the defense provided by Fowler White. Beach assumed the defense of the case for the three Defendants.

On September 11, 2008, the Levesques and Defendants entered into a settlement agreement in the approximate amount of $16 million to resolve the claims against Defendants. The settlement provided that in exchange for a consent judgment against Andrew's Florist and the release and dismissal against the Michaels of Levesque's claim, Andrew's Florist agreed to pursue Allstate for funds to satisfy the final judgment. On September 19, 2008, the state court entered the consent judgment. On that same day, Levesque died as a result of his cancer.

Allstate refused to pay the $200,000 policy limit under the policy and filed this action for declaratory judgment. Allstate alleges that the settlement agreement was entered into without the knowledge or consent of Allstate or Fowler White. Further, Allstate asserts that the settlement was the result of collusion between the Levesques and Defendants and was made in bad faith. In response, Defendants allege that Allstate breached the contract by failing to provide an adequate defense. Specifically, Defendants contend that Allstate and Fowler White failed to advise Defendants regarding a settlement offer.

II.     Allstate's Motion to Compel Deposition Testimony of Andrew Michaels

In September 2009, Allstate took the deposition of Andrew Michaels. During the deposition, Allstate's counsel asked Michaels "[D]id you come to learn that Allstate and the lawyers appointed by Allstate were not responding to Mr. Beach regarding the settlement offer that had been made?" (Dkt. 52-2 at 74). Michaels replied, "No. I did not, until I spoke with Mr. Beach" (Id.). When asked how Michaels arrived at the conclusion that Fowler White had not adequately prepared a defense, Michaels responded that he reached this conclusion after conversations with Beach (Id. at 84-85). Michaels further testified he concluded that Defendants were responsible for Cecchini's actions based on advice from Beach (Id. at 58-59). According to Michaels, Beach advised him about the factors that determine whether a person is an independent contractor or an employee (Id. at 65-66). Citing the attorney-client privilege, Michaels' attorney directed Michaels not to answer further questions with respect to communications he had with Beach regarding the adequacy of Allstate's defense and the independent contractor status of Cecchini (Id. at 62-63, 66, 85-87).

Allstate argues that Michaels expressly and implied waived any attorney-client privilege by testifying in great detail about his communications with Beach. Allstate also contends that because Defendants waived the attorney-client privilege as to Fowler White, Defendants also waived the privilege as it relates to Beach and the law firm of Smith Clark. Finally, Allstate asserts that under the "common interests" or "joint defense" exception to the waiver rule for attorney-client privilege, Defendants Blanca Michaels and Andrew's Florist likewise waived any attorney-client privilege as it relates to Beach and the law firm of Smith Clark.

In a diversity action such as this case, state law governs the scope of the attorney-client privilege. See 1550 Brickell Assocs. v. Q.B.E. Ins. Co., 253 F.R.D. 697, 699 (S.D. Fla. 2008).

3

Pursuant to Florida law, a communication between an attorney and client is confidential "if it is not intended to be disclosed to third persons." Fla. Stat. § 90.502(1)(c). A party may waive the privilege if the person "voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication." Fla. Stat. § 90.507. The burden of establishing the application of the attorney-client privilege rests on the party asserting the privilege. Cone v. Culverhouse, 687 So. 2d 888, 892 (Fla. 2d DCA 1997).

The relevant deposition testimony indicates that Michaels did not waive the attorney-client privilege regarding his communications with Beach. Michaels did not disclose any specific details on the substance of his communications with Beach. The mere fact that Michaels testified about the facts concerning his consultation with Beach does not constitute a waiver of the privilege. Brookings v. State, 495 So. 2d 135, 139 (Fla. 1986). Michaels' general and limited statements regarding the nature of his communications with Beach are not purposeful, substantive disclosures which constitute the voluntary waiver of the privilege. See Lee v. Progressive Express Ins. Co., 909 So. 2d 475, 477 (Fla. 4th DCA 2005).

Under the sword and shield doctrine, a party who raises a claim that will necessarily require proof by way of a privileged communication cannot insist that the communication is privileged. Gab Bus. Serv. Inc. v. Syndicate 627, 809 F.2d 755, 762 (11th Cir. 1987). If a client is required to call his attorney to testify on the issues necessary to establish his claim, the client waives the right to insist that the matter is privileged in pretrial discovery proceedings. Savino v. Luciano, 92 So.2d 817, 819 (Fla. 1957). Here, Michaels' general statements regarding his communications with Beach are not offered as evidence to support a claim or defense in this action. Rather, Defendants assert

4

that the issue of whether Fowler White responded to Beach is a factual matter that can be discovered by Plaintiff deposing the attorney at Fowler White. Likewise, Defendants contend the issue of whether Cecchini was acting as Defendants' agent can be determined by the facts that existed at the time of the accident. Thus, Defendants have not waived the attorney-client privilege under the sword and shield doctrine.

When a client is represented by more than one attorney, the client is not precluded from asserting the attorney-client privilege with respect to matters which may have been discussed with one attorney but not with another. Volpe v. Conroy, Simberg & Ganon, P.A., 720 So. 2d 537, 539 (Fla. 4th DCA 1998). This is particularly true in the context of insurance representation where the interests of the insured in protecting his position may compel the insured to retain and communicate with personal counsel. Id. In this case, there is no evidence that Michaels disclosed the substance of his confidential communications with Beach to counsel from Fowler White or Smith Clark. Thus, when Michaels waived the attorney-client privilege with respect to communications with Fowler White, he did not waive the attorney-client privilege relating to communications with Beach and Smith Clark.[2]

Having found that Michaels did not waive the attorney-client privilege as to his

---

[2] Plaintiff's reliance on Baratta v. Homeland Housewares, LLC, 242 F.R.D. 641 (S.D. Fla. 2007), is misplaced. In Baratta, the issue was whether the client's litigation attorney had settlement authority when he reached an agreement with opposing counsel. Id. at 642-43. Because the client's patent attorney was fully advised of the progress of the settlement discussions and likely possessed relevant information regarding the litigation counsel's authority to settle, the client could not selectively assert the attorney-client privilege with respect to settlement communications with his patent attorney, but not with his litigation counsel. Id. at 643. Here, there is no evidence that Michaels shared confidential communications he had with Beach with counsel from Fowler White and Smith Clark. Nor is there evidence that Defendants intend to prove a claim or defense by relying on Michaels' testimony with Beach.

5

communications with Beach and Clark Smith, it is unnecessary to address the issue of whether Blanca Michaels and Andrews Florist waived the attorney-client privilege under the "common interest" or "joint defense" exception to the general waiver rule. Thus, Plaintiff's motion to compel the deposition testimony of Michaels is denied.

III.    Defendants' Motion to Compel Production of Documents

In July 2009, Defendants served a request for production of documents seeking Allstate's claim file. Specifically, Defendants seek: (1) all written communications, written memoranda of verbal communications, and all notations, transcripts, audio tapes, videotapes and computer files, which record communications to or from Allstate and Defendants, the Levesques, and Cecchini, (2) any documents reflecting Allstate's evaluation of Levesque's claim against Defendants, (3) a copy of all computer directories which contain data related to Levesque's claim against Defendants, and (4) all documents setting forth discussions, conversations, resolutions, decisions, determinations, and/or votes of any meetings relating to Levesque's claim against Defendants.

Defendants assert that the claim file is relevant to Allstate's handling and evaluation of the underlying tort action and seek claim file documents dating from the date of the accident to the date of the final judgment against Defendants. Defendants contend that the claim file is not protected by the work product privilege because there is a fiduciary relationship between Defendants and Allstate. According to Defendants, the work product doctrine does not preclude the production of the claim file when such material is sought by the insured asserting an inadequate defense argument. In addition, Defendants allege that Allstate failed to produce a privilege log.

Allstate asserts that the production of the claim file is not required to decide the disputed coverage issue in this case. Prior to the determination of coverage, Allstate asserts that its claim file

6

constitutes work product and is not discoverable. Further, Allstate argues that Defendants' inadequate defense argument is nothing more than a bad faith claim, which Defendants may not bring until the issue of coverage is determined. To the extent that Defendants seek documents relating to Fowler White's defense, Allstate contends that Fowler White has produced relevant documents to Defendants. In reference to the privilege log, Allstate maintains it is not required to produce a privilege log of a claim file in a coverage dispute action, but that it will immediately produce a log if the court directs such production.

To satisfy its obligation to defend, an insurer must provide an adequate defense. Carrousel Concessions, Inc. v. Fla. Ins. Guar. Ass'n, 483 So. 2d 513, 516 (Fla. 3d DCA 1986). If an insurer fails to adequately defend an insured, its conduct constitutes a breach of a contract. Id.[3] When an insurer accepts the defense obligations of its insured, a fiduciary relationship exists between the parties and the parties share common interests during the underlying proceedings. Liberty Mut. Fire Ins. Co. v. Kaufman, 885 So. 2d 905, 908 (Fla. 3d DCA 2004).[4] Thus, where an insured alleges that an insurer failed to adequately defend, any correspondence and communications between the insurer and the insured's retained counsel concerning the defense of the insured are subject to discovery.

---

[3] Allstate cites Carrousel Concessions for the proposition that any discovery pertaining to Defendants' inadequate defense claim should be limited to the insurance contract and the evidence in the files of Fowler White. Carrousel Concessions, however, did not address the scope of discovery in a failure to adequately defend claim. Rather, the issue was whether an insurance company was liable for an insured's attorney's fees and costs in defending a claim after the insurance company refused to defend. Id. at 517.

[4] Allstate argues that the Kaufman case is distinguishable because the discovery of the claim file was premised on the court's determination of coverage under the policy and the insured's bad faith claim. However, in Kaufman, the trial court determined there was no coverage under the policy and permitted discovery of the claim file based on the fiduciary relationship between the insurer and insured as well as the insured's claims of bad faith and failure to provide an adequate defense. Id. at 908-09.

See Id. at 909; Geico Cas. Co. v. Beauford, No. 8:05-CV-697-T24-EAJ, 2007 WL 1192446, at *3 (M.D. Fla. Apr. 23, 2007). Further, documents containing comments and evaluations by representatives of the insurer concerning the legal work performed by the insured's retained counsel while representing the insured must be produced. Kaufman, 885 So. 2d at 910. However, correspondence and communications between an insurer's employees or agents and the insurer's in-house counsel are privileged and are not subject to production. Id. at 909.

Defendants allege that Plaintiff failed to provide an adequate defense by failing to advise Defendants of a settlement offer. Defendants assert a breach of contract claim against Plaintiff, not a bad faith claim. Therefore, documents related to Allstate's defense and evaluation of the underlying tort action against Defendants during the time of Fowler White's representation of Defendants are relevant to Defendants' claim of inadequate defense. In light of the fiduciary duty owed by Allstate to Defendants, and Defendants' allegations that Allstate failed to adequately defend the underlying tort action, Defendants have shown good cause to produce portions of the claim file.

Accordingly, within fourteen (14) days of this order, Allstate shall produce: (1) any correspondence or communications between Allstate and Fowler White pertaining to the defense of Defendants during the time period while Fowler White represented Defendants,[5] (2) any documents, notes, observations, or evaluations by representatives of Allstate concerning the legal work or performance by Fowler White during the time that Fowler White represented Defendants, and (3) all correspondence or communications between Allstate and Defendants, the Levesques, and Cecchini (including agents, employees, or attorneys acting on their behalf) relating to the defense

---

[5] Fowler White represented Defendants from August 31, 2005 to August 21, 2008.

8

of the underlying tort claim against Defendants during the time that Fowler White represented Defendants.

Allstate's blanket assertion of privilege relating to documents in the claim file is insufficient. Pursuant to Rule 26(b), when a party withholds information otherwise discoverable by claiming the information is privileged, the party must expressly make the claim and describe the nature of the documents not produced and "do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Rule 34(b) provides that "[a]n objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Accordingly, within fourteen (14) days of this order, Allstate shall provide Defendants with a privilege log identifying each document in sufficient detail to permit opposing counsel and the court to assess the applicability of the claimed privilege. The privilege log shall include the author, recipient, subject matter of the document, and specific explanation of why the document is privileged.

IV.   Allstate's Motion to Compel Non-Party Tidewell to Comply with Subpoenas and
      Motion to Compel Non-Parties VA Hospital and Bay Pines Hospital to Produce Records

Allstate subpoenaed Levesque's medical records from Tidewell Hospice ("Tidewell"), James A. Haley Veterans Hospital, and Bay Pines VA Medical Center ("Bay Pines"). Tidewell and the hospitals refused to release the medical records without a court order.[6] Allstate filed motions to compel production of the medical records arguing that they are relevant to whether the settlement agreement was reasonable and made in good faith. Allstate agrees to cover any expenses incurred by Tidewell and the hospitals in complying with the subpoenas. Allstate further agrees to comply

---

[6] Although Bay Pines subsequently produced Levesque's medical records to Allstate, Allstate's counsel has not reviewed these records pending the court's ruling on the motion.

with privacy and confidentiality requirements pertaining to the medical records.

Citing privacy concerns and lack of relevancy, Defendants contend that any medical records concerning Levesque's condition during the pendency of the underlying suit or after the settlement agreement are irrelevant because Levesque's medical status was not in question when the settlement was finalized. Further, Defendants argue that Allstate had the opportunity to conduct discovery in the underlying tort action and should not be allowed to re-litigate issues relating to that action because they refused to defend Defendants.

An insurer will be bound by the terms of a settlement agreement negotiated by a claimant and its insured where damages are covered by the policy, the insurer wrongfully refused to defend, and the settlement was reasonable and made in good faith. Wrangen v. Pa. Lumbermans Mut. Ins. Co., 593 F. Supp. 2d. 1273, 1278 (S.D. Fla. 2008). Under Florida law, the reasonableness of a settlement agreement is determined by what a reasonably prudent person in the position of the insurer would have settled for on the merits of plaintiff's claim. Id. at 1279. In determining the reasonableness of a settlement, courts consider certain objective and subjective factors. Id. Objective factors include "the extent of plaintiff's injuries, his past, present, and future medical expenses, his age, and his ability to work." Home Ins. Co. v. Advanced Mach. Co., 443 So. 2d 165, 168 (Fla. 1st DCA 1983) (citation omitted). Subjective factors include the degree of certainty of the liability, the risks of proceeding to trial, and the chance that the jury verdict may exceed the settlement offer. Id. at 168-69 (citations omitted). Moreover, the issue of whether a settlement agreement was made in good faith involves matters pertaining to the underlying facts of the case. Wrangen, 593 F. Supp. at 1280.

In this case, Allstate asserts that the $16 million settlement amount includes past and future

economic damages based on Levesque's injuries and life expectancy of 22.3 years. Allstate also alleges that the settlement agreement was the result of collusion between the Levesques and Defendants and was made in bad faith. Because Levesque's injuries and his economic damages constitute part of the inquiry into the reasonableness and good faith of the settlement agreement, Levesque's medical records from the date of the accident to the date of the September 11, 2008 settlement agreement are relevant under Fed. R. Civ. P. 26. Therefore, the court finds good cause to compel the production of such records and grants in part Plaintiff's motions to compel Tidewell and the hospitals to comply with the subpoenas. Allstate shall pay for any expenses incurred by Tidewell and the hospitals in complying with the subpoenas.

However, in light of the confidential information contained in these records, the production of the documents shall be subject to a stipulated protective order which complies with federal and state regulations pertaining to the disclosure of medical records and Local Rule 1.09, M.D. Fla.. See also In re Alexander Grant & Co., 820 F.2d 352, 355 (11th Cir. 1987), aff'g 629 F. Supp. 593, 597 (S.D. Fla. 1986). Within ten (10) days of this order, the parties are directed to confer regarding the terms of the protective order and file the proposed protective order with the court.

Accordingly, and upon consideration, it is **ORDERED** that:

(1) Plaintiff's **Motion to Compel Deposition Testimony of Michael Andrews, II** (Dkt. 52) is **DENIED**;

(2) Defendants' **Amended Motion to Compel Production of Documents** (Dkt. 54) is **GRANTED IN PART**;

(3) Plaintiff's **Motion to Compel Non-Party Tidewell to Comply with Subpoenas** (Dkt. 55) and Plaintiff's **Motion to Compel Non-Parties VA Hospital and Bay**

11

**Pines Hospital to Produce Records** (Dkt. 56) are **GRANTED IN PART**.

**DONE AND ORDERED** in Tampa, Florida on this 25th day of January, 2010.

*/s/ Elizabeth A. Jenkins*
ELIZABETH A JENKINS
United States Magistrate Judge