## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ALLSTATE INSURANCE COMPANY,
    An Illinois Corporation,

    Petitioner,

vs.                                               CASE NO.: 8:08-cv-02253-VMC-EAJ

DOLORES LEVESQUE, individually and as
Personal Representative of the ESTATE OF
ROBERT M. LEVESQUE, BLANCA MICHAELS,
and ANDREWS FLORIST ON 4TH STREET, Inc.,
A Florida Corporation a/k/a ANDREWS FLORIST
ON 4TH STREET NORTH, INC. and ANDREWS
ON 4TH ST. INC,

    Respondents.

_____/

### RESPONSE IN OPPOSITION TO PETITIONER'S MOTION TO STRIKE SUPPLEMENTAL OPINION TESTIMONY OF MICHAEL S. RYWANT, ESQ., AND INCORPORATED MEMORANDUM OF LAW

ANDREW'S FLORIST ON 4th STREET, INC., a/k/a ANDREW'S FLORIST ON 4th STREET NORTH INC., and ANDREW'S on 4th ST. INC. ("ANDREW'S FLORIST (collectively, "Respondents"), by and through their undersigned counsel, hereby file this response and incorporated memorandum of law in opposition to Petitioner's Motion to Strike Supplemental Opinion Testimony of Michael S. Rywant, Esq., (Dkt. 219) and further state as follows:

## **BACKGROUND**

1. Petitioner and Respondents have each filed supplemental expert disclosures in this case after the deadline set by the Court for expert disclosures. While this Court recently permitted Petitioner's supplemental expert disclosure, now the issue of Respondents' supplemental disclosure is before the Court on Allstate's Motion to Strike Supplemental Opinion Testimony of Michael S. Rywant.

2. Trial in this matter was originally set for the May, 2010, trial docket. Allstate's expert disclosure and reports were due on September 25, 2009 and Andrew's Florist's expert disclosure and reports were due on December 24, 2009 (Dkt. 20).

3. Allstate disclosed its expert, Daniel P. Mitchell, Esq., with report, on September 25, 2009. Mr. Mitchell was originally deposed by the respondents on January 19, 2010.

4. Andrew's Florist disclosed its expert, Michael S. Rywant, Esq., with report, on October 29, 2009. Mr. Rywant's deposition was taken by Allstate on April 16, 2010.

5. Subsequently, trial was reset for the October 2010 trial docket, and certain pretrial deadlines were extended, but no pretrial disclosure deadline was established (Dkt. 127).

6. Allstate sought the medical records of Robert M. Levesque from Bay Pines V.A. Hospital, James A. Haley V.A. Hospital, and Tidewell Hospice via Subpoena to Produce Documents and Subpoenas Duces Tecum dated October 12, 2009. Andrew's Florist served Allstate with a Request for Copies for each of these records dated October 27, 2009 (Exhibit 1). These health care providers declined to release the records to

anyone[1] without court order, which Order was subsequently obtained by Allstate on February 10, 2010 (Dkt. 141).

7. By letter dated March 15, 2010, Allstate produced to Andrew's Florist a copy of the records they had received from James A. Haley V.A. Hospital and Tidewell Hospice (transmittal letter attached as Exhibit 2).

8. On March 18, 2010, Mr. Mitchell prepared a supplemental report (the "Mitchell Supplement") which Allstate did not produce to Respondents until May 25, 2010. (Dkt. 193-1).

9. In the Mitchell Supplement, Mr. Mitchell not only added to his prior opinions regarding "adequate defense" and "unreasonable consent judgment," but he added an entirely new opinion that the consent judgment was made in bad faith. His supplemental opinion states that it is based on the Bay Pines V.A. Hospital medical records, the Tidewell Hospice medical records, and case law.

10. Andrew's Florist moved to strike the Mitchell Supplement on June 29, 2010 (Dkt. 193), on the basis that it was untimely and improperly expressed wholly new opinions.

11. On August 31, 2010, at the pretrial meeting between counsel, Allstate produced two CDs labeled only as "Allstate v. Levesque, Exhibits 1-15." (Exhibit 3). Although not indexed or labeled as such, the Bay Pines V.A. Hospital medical records were contained

---

[1] In the Court's Order of November 22, 2010, although the Court said "the Defendants have had the benefit of Levesque's medical records from the outset of the litigation," that statement was not correct. Andrew's Florist has never been in any better position than Allstate to receive medical records. Both of the V.A. hospitals and Tidewell Hospice refused to release the records to anyone without a court order, including representatives of Mr. Levesque.

on one of the CDs.[2] Two days after receipt of the CDs, the trial date and other deadlines were cancelled (Dkt. 201).

12. On November 22, 2010, the court issued an order denying Andrew's Florist's Motion to Strike Mitchell's Supplemental Opinion (Dkt. 205). In that Order, the court opined in relevant part as follows:

a. The Mitchell Supplement was timely because no pretrial disclosure deadline had been specified in the order setting trial. Therefore, the default deadline was thirty days before trial and thus, the Mitchell Supplement was timely. (Dkt. 205, p. 3).

b. As to the supplemental opinions related to Mitchell's "Unreasonable Consent Judgment" Opinion, they were not "substantially different than the opinion expressed in the original report." These opinions were permissible because "Although Mitchell should have cited these cases in his original report, Defendants were not prejudiced by this failure." (Dkt. 205, p. 5).

c. As to Mitchell's "Bad Faith Consent Judgment" opinion, this new opinion was based on the medical records that Allstate received after the deadline for submitting expert reports. "Thus, Mitchell's failure to include the opinion in his original report is substantially justified." (Dkt. 205, p. 6). Further, the "Defendants have had the benefit of Levesque's medical records from the outset of the litigation. Therefore, the 'bad faith' opinion does not prejudice Defendants." (Dkt. 205, p.6).

---

[2] Despite extensive review of their case file, counsel for Andrew's Florist was unable to identify a time prior to this date that they were ever in possession of the Bay Pines V.A. Hospital medical records. As a courtesy prior to the filing of this brief, counsel asked Allstate to provide any actual proof that they had produced the records earlier. Allstate was unable to do so except for a recollection of unsuccessfully trying to give Respondents' counsel the records on a CD disk sometime in March.

13. By order dated November 24, 2010, trial was rescheduled to February 7, 2011, with pretrial stipulation due January 6, 2011, and pretrial conference scheduled for January 12, 2011 (Dkt. 206). Significantly, no pretrial disclosure deadlines were established in this order either.

14. Mr. Mitchell's second deposition, relating to his supplemental report, was taken on December 21, 2010 (Dkt. 222). During that deposition, Mitchell agreed that the "Bad Faith Consent Judgment" opinion in his supplemental report was a new opinion. He stated as follows:

> *Q. [by Elizabeth Zwibel]        Now, this is a new opinion, correct? This wasn't really discussed in your last written opinion or in your deposition, the issue of the consent judgment being in bad faith, if not fraudulent, correct?*
> *A. [by Daniel Mitchell]        Well, yes, it's new. In my previous report, I did discuss the fact that I had an opinion that the consent judgment was not reasonable, but this goes beyond that opinion. And so I view it as augmenting that opinion, but it is a new opinion.*
> (Dkt. 222, pg 13, lines 16-25).

15. On January 6, 2011, Andrew's Florist served Allstate with the Supplemental Expert Disclosure of Michael S. Rywant, Esq. (the "Rywant Supplement") (Dkt. 219-1). The Rywant Supplement provided additional bases for his prior opinion that the settlement was reasonable and made in good faith.

16. Allstate filed its Motion to Strike Supplemental Opinion Testimony of Michael S. Rywant, Esq., on January 11, 2011 (Dkt. 219), alleging that it was untimely, relies on improper evidence, contains new opinions, and is substantially prejudicial.

17. As explained in more detail below, Allstate's motion to strike the Rywant Supplement should be denied under the same rationale the court applied in denying Andrew's Florist's motion to strike the Mitchell Supplement. The supplemental opinion is timely

5

by this court's own definition, and it meets the requirements of Rule 26(e) for supplementing expert disclosures. Further, it is permissible under the exceptions enumerated in Rule 37(c)(1): it is substantially justified based on Allstate's failure to provide Andrew's Florist with the medical records, Allstate's late disclosure of its expert's new opinions based on those records, and their expert's misreading of those records; and the supplemental opinion is not prejudicial to Allstate.

## MEMORANDUM OF LAW

### A.   THE LAW APPLICABLE TO SUPPLEMENTAL OPINIONS.

Federal Rule of Civil Procedure 26(a) provides that disclosure of the identity of an expert witness and the expert's written report "shall be made at the times and in the sequence directed by the court." The expert disclosure must be accompanied by "a written report - prepared and signed by the witness…. The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them." Fed.R.Civ.P. 26(a)(2)(B)(i) and (C).

Rule 26(e), Fed.R.Civ.P., provides the framework for supplementing the required expert disclosures. It states in pertinent part:

> (e) Supplementing Disclosures and Responses.
> …
> (2) Expert Witness. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

The failure to disclose expert opinions in a timely manner results in the exclusion of that information "unless the failure was substantially justified or is harmless." Fed.R.Civ.P.

6

37(c)(1). Substantial justification is justification to a degree that could easily satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. See Poole v. Gee, No. 8:07-CV-912-EAJ, 2008 WL 2397603, at *2 (M.D. Fla. June 10, 2008) (citations and internal quotation marks omitted). Failure to disclose is harmless where there is no substantial prejudice to the party entitled to receive the disclosure. Id. The non-disclosing party bears the burden of establishing that the failure to disclose was substantially justified or harmless. Id.

**B.    RYWANT'S SUPPLEMENTAL REPORT IS TIMELY.**

Allstate asserts that the Rywant Supplement is untimely. This issue is easily resolved in Andrew's Florist's favor by reference to this court's prior order denying Respondents' Motion to Strike the Mitchell Supplement (Dkt. 205). The court stated:

> The Case Management and Scheduling Order established September 25, 2009 as the deadline for disclosing expert reports (Dkt. 20), and the court's order on January 22, 2010 set the trial for the court's October 2010 trial calendar (Dkt. 127). But the deadline for providing pretrial disclosures was never addressed. Because the court did not order otherwise, the deadline for providing supplemental expert reports was thirty days before trial. Fed. R. Civ. P. 26(a)(3)(B).

(Dkt. 205, p. 3).

Likewise, the order resetting trial in this matter to February 7, 2011 (Dkt. 206), did not address the deadline for providing pretrial disclosures. Therefore, pursuant to the rules and as pronounced in this court's prior order, the deadline for providing supplemental expert reports was thirty days before trial. The Rywant Supplement was disclosed more than 30 days before trial and, therefore, is timely.

**B.     THE SUPPLEMENT MEETS THE REQUIREMENTS OF RULE 26(e).**

**1.   The purpose of Rule 26(e).**

"Rule 26(e) allows supplementation of expert reports only where a disclosing party learns that its information is incorrect or incomplete." Beauregard v. Continental Tire North America, Inc., 2009 WL 1011121, at *2-*3  (M.D. Fla. 2009) (citing Oklahoma v. Tyson Foods, Inc., No. 05-CV-329-GKF-SAJ, 2008 WL 4832658, at *2 (N.D. Okla. Oct. 28, 2008)).  "[T]he purpose of Rule 26(e) is to prevent 'unfair surprise' by ensuring that the other party has adequate notice of new information." McFadden ex rel. McFadden v. Board of Educ. For Illinois School Dist., U-46, Slip Copy, 2009 WL 4544670, (N.D. Ill. 2009). Furthermore, "Rule 26(e) imposes 'a duty to supplement or correct [a] disclosure or response to include information thereafter acquired' (emphasis added). Id. at *375.  Thus, when additional information becomes available after the initial disclosure that is important to the expert's opinions, a party is required to submit a supplemental disclosure.

Here, the Rywant Supplement falls squarely within the intent of the rule. Andrew's Florist, and by extension Mr. Rywant, did not receive critical records (specifically, the Bay Pines V.A. Hospital Records) until nearly a year after the original expert disclosure because Allstate failed to provide them. Once those records were analyzed by Mr. Rywant and he established that they affected his earlier opinions, Andrew's Florist had a *duty* to make the supplemental disclosure in order to prevent unfair surprise.

**2.     Limited scope of Rule 26(e) – new opinions.**

Allstate cites extensively to the Beauregard case to support its motion to strike. Specifically, they note that supplementation may not be used simply as a mechanism to

8

disclose wholly new opinions after the discovery deadline (Beauregard at *2-*3 (M.D. Fla. 2009)), and supplemental expert reports may not be used to bolster an expert's earlier opinion or correct an expert's inadequate preparation. Id.

However, Allstate's reliance on Beauregard is misplaced. First, the supplement in that case was not based on newly acquired materials for the expert's consideration as in the case at bar. In contrast, Mr. Rywant's supplemental disclosure was largely the result of Allstate's failure to timely produce medical records.

Second, the supplement in Beauregard included a "completely separate opinion" that the expert testified was a result of an oversight on her part. Id. Here, there were no "major omissions" from Mr. Rywant's initial opinion that the supplement sought to "cure" as in Beauregard. Mr. Rywant's supplement simply added additional factual bases for one of the opinions referenced in his initial report, based on newly acquired material.

Third, the statements in the Rywant Supplement do not contradict his prior report or his deposition testimony even if they are considered "new." Therefore, striking the supplement is not appropriate. See K & H Development Group, Inc. v. Howard, 255 F.R.D. 562 (N.D. Fla., 2009)(stating that the inclusion of new opinions by an expert in an addendum to his initial report does not provide a proper basis for striking the addendum if it did not contradict the opinions in his first report, citing Clark v. Resistoflex Co., A Div. Of Unidynamics Corp., 854 F.2d 762, 766 (5th Cir.1988)), see also Glaxo Wellcome, Inc. v. Andrx Pharmaceuticals, Inc., 2002 WL 34407982 (S.D. Fla., 2002).

**C.  THE SUPPLEMENT IS PERMISSIBLE UNDER THE EXCEPTIONS TO RULE 37(c)(1).**

For reasons discussed above, the Rywant Supplement is proper because it meets all of the substantive and procedural requirements of Fed.R.Civ.P. 26(a) and 26(e), and therefore Allstate's motion to strike must fail.  However, assuming for the sake of argument that there is some doubt on that score, the Rywant Supplement should be permitted because it meets the exceptions of Fed.R.Civ.P. 37(c)(1), in that the failure to provide this information in the original disclosure was substantially justified or is harmless.

**1. The "late" disclosure is substantially justified.**

On this single element alone, the court must find that the Rywant Supplement stands.

- When Allstate issued a subpoena for the Bay Pines V.A. Hospital records, Andrew's Florist timely served a request for copies of any documents provided.

- Bay Pines V.A. Hospital initially refused to produce Mr. Levesque's medical records to anyone without a court order.

- Allstate eventually received the Bay Pines V.A. Hospital medical records on November 22, 2009, but declined to view or use them until it had a court order compelling the disclosure (Dkt. 75).

- Allstate obtained a court order on February 10, 2010, for production of the medical records from Bay Pines V.A. Hospital, James A. Haley V.A. Hospital, and Tidewell Hospice (Dkt. 141).

- On March 15, 2010, Allstate produced to respondents just the James A. Haley V.A. Hospital records and the Tidewell Hospice records (Exhibit 2), but not the Bay Pines V.A. Hospital records.

- By March 18, 2010, Allstate's expert, Mr. Mitchell, had reviewed the Bay Pines V.A. Hospital records and Tidewell Hospice records, and had already completed his written supplemental report.

- However, the Mitchell Supplement was not disclosed to the defendants until May 25, 2010, more than two months after it was completed.

- In his supplemental report, Mr. Mitchell relies on the discharge summary from Bay Pines V.A. Hospital (Exhibit 4), covering the time period of August 12 -14, 2008, as evidence supporting his new "Bad Faith Consent Judgment" opinion (Dkt. 193-1, page 3). This time period is absolutely critical because the consent judgment agreement was reached by the parties shortly thereafter. Mr. Mitchell erroneously reports the stage of Mr. Levesque's cancer from that discharge summary as being a "4," then argues that his "internet research" about that information proves that Mr. Levesque had a minimal life expectancy.   In fact, nowhere in that discharge summary does it state that Mr. Levesque's cancer was stage 4, nor does it indicate that he is terminal or even what his life expectancy is at that time.

- Allstate did not produce the Bay Pines V.A. Hospital medical records until August 31, 2010, when it was included on a CD of Allstate's trial exhibits.

- On November 22, 2010, the court denied Andrew's Florist's motion to strike Mr. Mitchell's new opinions and his deposition was taken on December 21, 2010.

- Mr. Mitchell admitted at deposition that he was putting forward a new opinion regarding the consent judgment being in bad faith.

- Mr. Rywant's supplemental report, prepared after he reviewed Mr. Mitchell's deposition testimony and the recently disclosed medical records, was provided to Allstate just two weeks later, on January 6, 2011.

Mr. Rywant's not disclosing the supplemental bases for the opinions in his original report is substantially justified based on the same rationale used by this court in its order denying Andrew's Florist's motion to strike the Mitchell Supplement (Dkt. 205). In that order, the court noted that Mitchell's new opinion was based on the medical records that Allstate received after the deadline for submitting expert reports. "Thus, Mitchell's failure to include the opinion in his original report is substantially justified." (Dkt. 205, p. 6). Here, Andrew's Florist did not have the critical medical records until after the original disclosure deadline had passed. *Indeed, Andrew's Florist did not have possession of any of the medical records upon which Mr. Mitchell based his supplemental report until on or after the time Mr. Mitchell had already <u>completed</u> the report and nearly a year after Mr. Rywant's timely initial disclosure.*

This argument becomes even more compelling when one considers that the content and timing of Mr. Rywant's supplemental report, of which Allstate complains, is the direct result of Allstate's actions: its delayed production of the critical Bay Pines V.A. Hospital records; the introduction of the new supplemental opinions of their own expert based at least partially on those very records; and the misreading of the content of those records made by their expert in his new opinions.

### 2. The "late" disclosure is harmless.

This court noted in its order denying Andrew's Florist's motion to strike the supplemental report of Mr. Mitchell: "Defendants have had the benefit of Levesque's medical

records from the outset of the litigation. Therefore, the 'bad faith' opinion does not prejudice Defendants." (Dkt. 205, p.6). Although not factually correct, the court's rationale is directly applicable in this situation. Allstate actually had possession of the Bay Pines V.A. Hospital medical records since November 22, 2009, and full use of the records effective with the court's order on February 10, 2010. It failed to provide these critical records to Andrew's Florist until August 31, 2010, nearly six months later. It cannot now be heard to complain that it is prejudiced about opinions based on those same records.

**D. THE RYWANT SUPPLEMENT DOES NOT RELY ON IMPROPER EVIDENCE**

**1. The Rywant Supplement is not based on Mr. Mitchell's report or deposition.**

Allstate objects to the Rywant Supplement, in part, because it is provided "in reaction to Mr. Mitchell's deposition" (Dkt. 219, page 5). Allstate claims that Mr. Rywant is improperly "basing" his supplemental opinion on testimony from Mr. Mitchell's second deposition that is outside the scope dictated by this court's order (Dkt. 205).

First, their objection to the scope of Mr. Mitchell's second deposition ignores the fact that Andrew's Florist had just recently received the Bay Pines V.A. Hospital records; that by his own admission, Mr. Mitchell was providing a new opinion in his supplemental report; and furthermore, that Mr. Mitchell's opinion relied on what he erroneously stated was the stage of cancer contained in the Bay Pines V.A. Hospital discharge summary. The fact that Allstate's expert testified to areas possibly beyond the scope of the court's order does not support the striking of Mr. Rywant's supplement.

Second, it is apparent on the face of the Rywant Supplement that Mr. Rywant does not "base" his supplemental conclusions on Mr. Mitchell's deposition. The report states as follows:

> I have considered the following data and information in supplementing my opinions:
> a. All previously disclosed data and information.
> b. Medical records from Bay Pines VA and Tidewell Hospice
> c. Reports of Dwight Fitch, M.D., including the attached.

(Dkt. 219-1, p. 2).

While Mr. Rywant states that he read Mr. Mitchell's testimony, his conclusions are clearly based other evidence.

### 2. Dr. Fitch's second report is not an untimely expert report subject to exclusion under Rule 37(c)(1).

Allstate objects to Mr. Rywant's supplemental opinion because it includes a second report from Dr. Fitch (Dkt. 219-2), which Allstate asserts amounts to an undisclosed expert report. Andrew's Florist disagrees with Allstate's characterization of Dr. Fitch's second report as an undisclosed expert report. The report was included as a courtesy to Allstate, whose own expert wrongly interpreted the medical records in this case. The second report from Dr. Fitch merely clarifies his observations and assessments from treating Mr. Levesque.

This court eloquently expounded on the disclosure rules related to treating physician testimony in <u>Baratta v. City of Largo</u>, 2003 WL 25686843 (M.D. Fla. 2003). There, the defendants sought to exclude the trial testimony of the plaintiff's treating physician, arguing that they were prejudiced because they were unable to arrange for their own expert to rebut

the doctor. In denying the motion to exclude the doctor's testimony, the court noted as follows:

> *1…..Rule 26 (a)(2)(A), Fed.R.Civ.P., provides that a party is required to disclose any person who may be used at trial to present evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence.
>
> *2 However, written reports are required only of those experts "who [are] retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony ..." Fed.R.Civ.P. 26(a)(2)(B). The Advisory Committee's Note explains that a treating physician may testify without a report. Fed.R.Civ.P. 26(a)(2) advisory committee's note, 1993 amendment.
>
> Rule 26 focuses not on the status of the witness, but rather on the substance of the testimony. Foster v. Lawrence Memorial Hospital, 1993 WL 156131 (D.Kan.1993). A witness may be both an expert witness under Rule 26(a)(B)(4) as to some matters and an ordinary witness on other areas. Marine Petroleum Co. v. Champlin Petroleum Co., 641 F.2d 984, 992 (D.C.Cir.1980).
>
> A treating physician does not need to submit an expert report if planned testimony was acquired "not in preparation for trial, but rather because he was an actor or viewer with respect to transactions or occurrences that are a part of the subject matter of the lawsuit." Fed.R.Civ.P. Rule 26 advisory committee's note, 1993 amendment.
>
> Because a treating physician considers not only the plaintiff's diagnosis and prognosis, opinions as to the cause of injuries do not require a written report if based on the examination and treatment of the patient. Salas v. U.S., 165 F.R.D. 31, 33 (W.D.N.Y.1995). Testimony as to causation of an injury is not "expert testimony" that requires expert disclosure under Rule 26. Shapardon v. West Beach Estates, 172 F.R.D. 415, 416 (D.Haw.1997). Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury. *Id.* Instead, the relevant question is whether the treating physician acquired his opinions as to the cause of injuries directly through treatment. If so, the treating physician need not file a written report. If the treating physician testifies on information gathered outside of the course of treatment and the party does not file a Rule 26(a)(2)(B) report as to that testimony, it may be excluded. *Id.*

> **\*3** In Brown v. Best Foods, A Division Of CPC Int'l, Inc., 169 F.R.D. 385, 388 (M.D.Fla.1996), the court denied a motion to strike an expert for untimely disclosure but held that if the treating physician's testimony is not sufficiently related to information disclosed during the care and treatment of the patient, there must be an expert report. In accordance with *Brown,* Dr. Madsen may render an opinion as to causation and the need for future treatment if these opinions are sufficiently related to information disclosed during the care and treatment of Plaintiff.

Id. Dr. Fitch's second report encompasses observations and opinions that were acquired "not in preparation for trial, but rather because he was an actor or viewer with respect to transactions or occurrences that are a part of the subject matter of the lawsuit." Id. He did not review any outside material, other than "his records" on Mr. Levesque (Dkt. 219-2). He discusses Mr. Levesque's condition, treatment plan, and prognosis "[a]t the time of my consult with Mr. Levesque, on August 18, 2008" (Dkt. 219-2). Dr. Fitch acquired his opinions directly through examination and treatment of the patient, and thus no report was required.

Furthermore, Allstate has been aware of Dr. Fitch's role in the care and treatment of Mr. Levesque at least since March, 2010, when they received the James A. Haley V.A. Hospital medical records. Dr. Fitch has been disclosed as a potential trial witness in this case. Allstate cannot claim that it is prejudiced in receiving this additional information. Dr. Fitch's second report, and any testimony thereon, should not be excluded.

### 3. **Mr. Rywant's conclusions are supported by the other medical records.**

Despite Allstate's claim to the contrary, Mr. Rywant's conclusions are supported by the other medical records produced in this case. In his Outpatient Consultation Report dated August 18, 2008, (contained in the James A. Haley V.A. medical records obtained by Allstate), Dwight Fitch, M.D., stated as follows:

> Of note, he has a closed head injury secondary to a motorcycle accident approximately four years ago, that has debilitating him [sic] and makes his quality of life somewhat low…. I discussed treatment option with Mr. Levesque and his wife. We first went over what the standard recommendations would be in his situation. For a stage III squamous cell of the glottis /supraglottic region, either a surgical approach including laryngectomy or combined chemotherapy and radiation would be the primary treatment options. He has been seen by a medical oncologist who did not feel that in his neurologic condition chemotherapy would be a good choice. (Exhibit 5)

This note indicates that Mr. Levesque could not receive all of the recommended treatment due to his pre-existing head injury. Mr. Rywant's conclusion that Mr. Levesque's death could have changed the legal cause of action into a wrongful death case is a reasonable one. This is further supported by Dr. Fitch's second report, attached to the Rywant Supplement (Dkt. 219-2), in which he explains that a combination of chemotherapy and radiation therapy would most likely have "achieved a good response and it [cancer] would not have caused his death."

If the Rywant Supplement remains, as it should, Allstate's argument that it is significantly prejudiced because it will be forced to get additional medical expert opinion is without merit. Mr. Rywant's conclusions are supported by the very medical records that were in Allstate's possession before its expert, Mr. Mitchell, produced his supplemental report.

## **CONCLUSION**

For the reasons argued herein, the Court should deny Petitioner's Motion to Strike Supplemental Opinion Testimony of Michael S. Rywant, Esq.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **January 19, 2011**, I electronically filed the foregoing with the Clerk of the Court by using the CMF/ECF system which will send a notice of electronic filing to the following: Weslee Leigh Klinka Ferron of Callahan & Martinez, L.L.C., Daniel Martinez and Inguna Varslavane-Callahan, 2935 First Avenue North, Second Floor, St. Petersburg, Florida 33713, and Jason Mulholland, Esquire, 13902 North Dale Mabry Highway, Suite 163, Tampa, Florida 33618.

**/s/ Susan M. Wilson**
Susan M. Wilson, Esquire
Florida Bar No.: 545740
susanw@swopelaw.com
Brandon Cathey, Esquire
Florida Bar No.: 941891
brandonc@swopelaw.com
Dale Swope, Esquire
Florida Bar No.: 261270
Dales@swopelaw.com
SWOPE, RODANTE P.A.
1234 E. 5th Avenue
Tampa, Florida 33605
(813) 273-0017
(813) 223-3678 Facsimile
Attorneys For Respondents, Andrew's Florist and Blanca Michaels